IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PAMELA STEWARD, et al. | Case No.  3:18-cv-2905 |
| Plaintiffs, | Judge Jeffrey J. Helmick |
| v. | **DEFENDANT ROPPE** |
| | **CORPORATION'S MOTION** |
| ROPPE CORPORATION, et al. | **FOR SUMMARY JUDGMENT** |
| Defendants. | |

Now comes Defendant, Roppe Corporation, to move this court for an order dismissing all claims against it in this litigation.  The claim against Roppe is that it should be treated as Plaintiffs' employer for purposes of the Americans With Disabilities Act, 42 USC §§12111, et seq. and Ohio Revised Code §4112.02 under one of two legal theories:

(1) Roppe and Seneca Re-Ad Industries are joint employers, both of whom exercise equal direction and control over the plaintiffs; or

(2) Roppe and Re-Ad are engaged in a joint enterprise, a legal theory that two companies with interrelated operations, common management, ownership and centralized control of labor relations and personnel should be deemed a single enterprise for employment purposes.

The undisputed facts in the case can lead to no other conclusion but that Roppe Corporation is neither a joint employer nor engaged in a joint enterprise as those concepts are defined by the law.  Even if plaintiffs prevail against their actual employer, Seneca Re-Ad, (which they will not) Roppe has no responsibility for those claims asserted against their employer.

The facts and applicable legal authority supporting this Motion are discussed more fully in Defendant's Memorandum in Support of its Motion for Summary Judgment.

Respectfully submitted,

/s/ Roy A. Hulme
Roy A. Hulme (0001090)
Reminger Co., L.P.A.
One SeaGate, Suite 1600
Toledo, Ohio 43604-1584
Phone: 419-245-3759; Fax: 419-243-7830
Email: rhulme@reminger.com
Attorney for Defendant Roppe Corporation

## MEMORANDUM IN SUPPORT OF DEFENDANT ROPPE
## CORPORATION'S MOTION FOR SUMMARY JUDGMENT

**I.    STATEMENT OF THE CASE:**

This case arises from Plaintiffs claims that Defendants violated the Americans with Disabilities Act, 42 USC §§12111 et seq. ("ADA"), and a similar Ohio Statute, ORC §4112.02. Specifically, Plaintiffs allege Defendants Roppe Corporation, ("Roppe") and Seneca Re-Ad Industries, Inc. ("Seneca Re-Ad") violated the ADA and the Ohio Statute as "employers", whereas Seneca County Board of Developmental Disabilities (SCBDD) violated Title II of the ADA, for aiding and abetting Roppe and Seneca Re-Ad.  *See* Amended Complaint, generally.  To hold Roppe liable for the allegations, the Plaintiffs must first establish Roppe is somehow an "employer" within the meaning of those statutes. *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir.1997).  To do so, Plaintiff alleges Defendants Roppe and Seneca Re-Ad should be treated as a single employer under either one of the two propounded legal doctrines:

(3) That Roppe and Re-Ad are engaged in an integrated enterprise, a legal theory that two companies with interrelated operations, common management, centralized control of labor relations and personnel, and common ownership and financial control, should be deemed a single enterprise for employment purposes; or

(4) That Roppe and Seneca Re-Ad Industries are joint employers, both of whom exercise equal direction and control over the employees.

*See Id.*, and Amended Complaint at ¶¶ 112, 120, 126, and 132.

Defendant Roppe now moves for summary judgment on the grounds that it is not the employer of the Plaintiffs.  Moreover, the undisputed facts in the case can lead to no other conclusion but that Roppe Corporation is neither a "joint employer", nor engaged in an "integrated enterprise", as a matter of law.  Even if plaintiffs prevail against their actual employer, Seneca Re-Ad (which they will not), Roppe has no responsibility for those claims asserted against their

employer.  Accordingly, after extensive discovery completed by all parties, no genuine issues of material fact remain, thereby entitling Defendant Roppe to summary judgment on all of Plaintiffs' claims.

## II.    BACKGROUND, AND THE RELATIONSHIP OF ROPPE AND SENECA RE-AD:

By way of background, Seneca Re-Ad Industries is a non-profit corporation, incorporated in 1976, that provides employment related support services to adults with intellectual and developmental disabilities in Seneca County, Ohio.  *See* Ohio Secretary of State corporate records. On its face, this contradicts Plaintiff's allegation that in 1984, Seneca Re-Ad was "created solely" to manufacture samples for Roppe. *See* Amended Complaint, at pg. 6, and ¶ 15.

It is undisputed Roppe Corporation and many of its employees and officers are avid and staunch supporters of the Seneca Re-Ad social service program.  (Brian Cooper Deposition, November 18, 2019 at 59:15-60:3; Donald Miller Deposition, March 12, 2020, at p.15:20-16:7). That support does not change the fact that Seneca Re-Ad is first, foremost and solely a vendor for Roppe Corporation.   As set forth below, the only difference between the vendor/vendee relationship Roppe Corporation has with Seneca Re-Ad versus its other suppliers of samples, is that Roppe generously provides building, equipment, and maintenance to Seneca Re-Ad, that is not provided to other vendors.  Roppe still issues a purchase order for the product it wishes to purchase, receives an invoice for the product it purchases, and pays that invoice.  Roppe orders the samples it needs, when they are needed, just like it orders samples from its other sample vendors when they are needed. Roppe maintains continuous communication to monitor the status of those orders with Seneca Re-Ad, just like it does with its other vendors.  It supplies the material to be used in samples it orders, just like it does to its other vendors. If the samples are not of the quality

expected, Roppe expects Seneca Re-Ad to make it right, just as is expected of its other vendors. (Cooper, 85:24-86:12; 96:8-98:7; 265:22-268:13).

Donald Miller, current CEO of Roppe Holding Corporation, the entity that holds the stock of Roppe Corporation, has testified about his recollection of how the relationship between Roppe and Seneca County Board of Developmental Disabilities and Seneca Re-Ad developed. In summary, the relationship developed as follows: A sales manager working for Roppe at the time had a brother who was "mentally disabled."  The sales manager and Mr. Miller went to Seneca County Re-Ad to look for a county program that might provide work for this individual.  Seneca Re-Ad, at the time, could only provide work shredding paper over in Tiffin.  Mr. Miller then worked with Re-Ad to develop a product that these people with disabilities could make and sell to Roppe.  The Seneca program originally started with about 4 individuals, then went to 8, and as it grew, Roppe provided larger space and built equipment that they could use.  While the program started out in a little room at the Roppe plant, it is now expanded to a 22,000 square foot facility. (*See*: Miller 13:9-15:13.)

In Mr. Miller's own words:

"Now, they've been a really good supplier for us.  We give them an order, they do it.  They send us a bill.  We pay the bill.   And yes, I do go out there occasionally because I like these people a lot, and the last thing we'd ever want to do would be do anything to hurt them.   I don't know where they would be without their job at the Re-Ads because you wouldn't see them around town.  They'd be hidden away, most of them.  These people are generous, loving, and hardworking, and dedicated, and the last thing I want to do is to do anything that would hurt them.  (Miller, 15:20-16:7)

As to his goals regarding the relationship between Roppe and Seneca Re-Ad, his idea was to give developmentally disabled people meaningful tasks, and secondly, to have a supplier for Roppe samples.  (Miller 17:22-18:5) The workshop was and remains a social service program of the County, who is responsible to the State of Ohio for its operation.  The Roppe Board played no

3

role in the state paperwork; that is left to "Seneca County Re-Ad."  (Miller, 29:4-21:17). As can be deduced from Mr. Miller's testimony, he is a big fan of the Seneca Re-Ad program.  Regarding this litigation, he is frustrated; "No good deed goes unpunished."  (Miller, 46:16-24)

The claims of Plaintiffs in this case are based upon fiction, not facts. Extensive discovery among the parties has provided Plaintiffs' attorneys more than enough undisputed facts to know this.  To continue these meritless allegations can only serve to further chill future corporate engagement and contributions to non-profit corporations, such as Seneca Re-Ad.  It is time to bring this matter to a head and dismiss Roppe from this lawsuit.

## III.  FACTS:

### A.  THE PARTIES

To understand that these allegations will not stand up to summary judgment scrutiny, here is a description of the three defendants from the Amended Complaint, as supplemented by the testimony.

Roppe Corporation is a manufacturer of commercial flooring products founded in 1955.  It is a subsidiary of Roppe Holding Company.  *See* Amended Complaint, ¶¶ 1 and 12.  Roppe purchases the floor samples that it distributes to customers and retailers from three separate vendors, one of which is Seneca Re-Ad. *See* Cooper, 49:24-49:2, 51:20-52:4; 54:4-16, 55:7-59:6.

Seneca Re-Ad Industries Inc. is a non-profit corporation that provides employment related support services to adults with intellectual and developmental disabilities in Seneca County, Ohio. It employs 133 individuals with disabilities, including the three Plaintiffs.  *See* Amended Complaint, ¶¶ 4, 13, and 31; and Laurie A. Fretz October 17, 2019 deposition, 10:5-22.  Seneca Re-Ad is a "sheltered workshop". *See* Amended Complaint, ¶ 24 and Complaint, Footnote 3.

Seneca County Board of Developmental Disabilities is a public entity that provides employment related services for individuals with disabilities, whose staff oversees the employees of Seneca Re-Ad pursuant to a contract between Seneca Re-Ad and Seneca County Board of DD. *Id.* at ¶¶ 13 and 14. Employees of Seneca Board of Developmental Disabilities supervise the daily work activities of Plaintiffs at Re-Ad, (and provide other non-employment services not the subject of this lawsuit). *Id.* at ¶ 36.

As asserted in their Amended Complaint, to qualify to work in the workshop, an individual must (1) be a person with a disability that is qualified to receive services from SCBDD; (2) is available to receive vocational training and (3) can rotate within those tasks to receive the full range of training. *Id.* at ¶64.

The Plaintiffs state they qualify for employment services from SCBDD and are qualified to work at the Seneca Re-Ad workshop because they have the following disabilities:

- Pamela Steward – blindness in her right eye, intellectual disability, asthma and colitis, which limit her ability to see, concentrate, think, breath and perform digestive functions. *Id.* at ¶ 9.
- Ralph "Joe" Magers - legally blind. *Id.* at ¶ 10.
- Mark Felton – autism, which limits his ability to concentrate, think and communicate. *Id.* at ¶ 11.

It is undisputed that all three Plaintiffs are employees of Seneca Re-Ad. *See* Fretz 10:5-22. Each of the three Plaintiffs have confirmed that Roppe has no involvement in their employment.[1] To that point, their pertinent testimony incudes:

**Mark Felton has testified:**

- Prior to his deposition, he had no contact with anyone working for Roppe Corporation. *See* Felton 14:9-14.
- He has never applied to Roppe Corporation for a job. *Id.*, 14:15-17

---

[1] Joe Magers has attempted to equivocate by claiming he believes employment by Seneca Re-Ad is also employment by Roppe but as discussed herein, even he cannot avoid the facts.

- He has never contacted anyone working for Roppe Corporation about being hired by Roppe Corporation for a job, and he has never been employed by Roppe Corporation. *Id.*, 14:18-25

- When asked, Mr. Felton could not think of any tasks of an employee at Roppe Corporation that he wanted to do. *Id.*, 19:6-8

**Pamela Steward testified:**

- She has not had any contact with anyone from Roppe Corporation, has not submitted a job application or contacted anyone at Roppe to be hired.  She never considered herself employed by Roppe Corporation.  *See* Steward 28:22-29:1-8.

- The only jobs or tasks that she would like to do were those positions located at Seneca Re-Ad facility. *Id.*, 43:13-20; 43:25-44:4.

- Her paychecks come from Seneca Re-Ad. *Id.*, 68:13-21.

- She confirms she never received a paycheck from Roppe.  *Id.*, 84:20-25-85:14.

- She knows the difference between Seneca Re-Ad's and Roppe's production facility as her sister works for Roppe. *Id.*, 78:17-80:5.

**Joe Magers' testimony:**

- In five pages of testimony on the topic, even Mr. Magers was unable to rationally articulate how Roppe Corporation's production facilities should be involved in this lawsuit's (1) "integrated business/ single employer" or (2) "joint employer" theories. *See* Magers 42:15-47:8.

- Even Mr. Magers, who was presumably well prepared for the deposition, was unable to identify any jobs or tasks at Roppe Corporation that he would want to do. *Id.*, 64:3-5.

The transgressions said to be violations of the Anti-Disability Discrimination Statutes at paragraphs 109, 115, 123 and 129 of the Amended Complaint are all things controlled by an employee's actual employer: the performance of "job training opportunities", "individualized assessments", "determinations of compensation and benefits", and failing to provide Plaintiffs with "reasonable accommodations".   The Amended Complaint gives specific examples of alleged accommodation requests of the three Plaintiffs, all of which can only be addressed by plaintiffs' actual employer:

**Pamela Steward:**

- Job training in an "accessible format".  *See* Amended Complaint at ¶ 75
- Protective mask.  *Id.*, ¶ 78.
- Not to be assigned to "mundane" and "role tasks".  *Id.*, ¶ 40.
- Assignment at the front of the assembly line process, rather than the end or middle.  *Id.*, ¶ 82.

**Ralph Magers:**

- Training material in an accessible format. *Id.*, ¶84.
- Reorganization of his workstation so that "tiles are organized by color and in the correct position".  *Id.*, ¶86.
- Not to be assigned to "mundane" and "role" tasks.  *Id.*, ¶ 40.

**Mark Felton:**

- Requests short, periodic and flexible breaks in order to prevent himself from becoming overstimulated and to reorient himself.  *Id.*, ¶ 88, 89.
- Training in an accessible format. *Id.*, ¶ 90.
- Not to be assigned "mundane" and "role" tasks.  *Id.*, ¶ 40.

Thousands of documents have been produced. The three plaintiffs have been deposed. Thirteen other people have been deposed. All of this has confirmed what Plaintiffs' attorneys should be willing to concede; Roppe is not Plaintiffs' "employer" for purposes of their claims of disability claims by any definition of employer, under statute, common law, or common sense.

Since it is undisputed that Roppe is not the employer of the three Plaintiffs, their lawyers argued that the concept of "integrated business" or "joint employer" theories mentioned above are theories that Plaintiffs' lawyers are pursuing to entrap Roppe in this litigation. *Id.*, ¶¶ 15-29.  These arguments are based upon the faulty premise: "because Roppe and Seneca (Re-Ad) are part of a single, integrated enterprise and/or are joint employers, Roppe and Seneca are jointly and severally

liable for Plaintiffs compensatory damages (and punitive damages)." *Id.*, ¶¶ 112, 120, 126, and 132.

There is no evidence to support either of these theories. Defendant has established through irrefutable evidence that these theories are unsubstantiated by way of: (1) Testimony of the Plaintiffs (2) Testimony of Seneca County Board of Developmental Disabilities employees and its discovery responses, (3) responses of Seneca Re-Ad to discovery (4) and Testimony of Roppe employees and its discovery responses. The law is clear, and unambiguous. This litigation has progressed to the point opposing counsel should acknowledge that the theories that Seneca Re-Ad and Roppe are a single enterprise or jointly employ Plaintiffs is not true. Since they have not, this Court is now in the position, with the facts presented, to do what opposing counsel will not do voluntarily; dismiss this lawsuit.

**B.  EVIDENCE FROM SENECA COUNTY BOARD WITNESSES:**

Lewis Hurst is the Superintendent of the Seneca Board of Developmental Disabilities. *See* Hurst deposition, October 17, 2019, 16:13-16.  He has been in that position approximately 14 years. *Id.,* 16:17-20.  He oversees a variety of programs for the Seneca County Board including services for individuals from birth to age 3, programs for school age children with disabilities, and adult services ranging from community employment, provision of job coaches, two sheltered workshops, and adult day programs. They also provide senior programming.  The workshops are in Tiffin and Fostoria.  The three Plaintiffs in this case work at the Fostoria workshop. *Id.*, 17:16-20:19.

The Seneca Re-Ad workshop is staffed with people with developmental disabilities who have sought services from the Seneca County Board of Developmental Disabilities.  The intake procedure involves meeting with an intake specialist, being assigned an Service and Support

8

Administrator, (SSA), who would then outline available services. Those services include residential assistance, vocational assistance, assistance with various employment options for persons with disabilities.  Regarding employment services, employment with Seneca Re-Ad Industry is one of those available services.  *See* Biggert, 85:5-18. There is no evidence that Roppe is involved in this process.

Mr. Hurst has confirmed that County Board staff members, not Roppe employees, are the direct supervisors of the individuals with disabilities working at the workshop.  Those workshop specialists are, at the Fostoria workshop, supervised by Laurie Fretz.  Terry Stocker (Operation's Manager) is Laurie's supervisor, and Terry reports to Rodney Biggert, the County Board Director of Adult Services.  *See* Hurst, 29:1-30:4. Rodney Biggert reports to Mr. Hurst.  *Id.*, 32:24-33:7. Laurie Fretz and the workshop specialists are all also County Board employees.  *Id.*, 33:14-18. There are no Roppe employees in this chain of command. The type of work being done by Seneca Re-Ad Fostoria location include samples being produced for Roppe, cardboard boxes assembled for Whirlpool, sometimes there are contracts with Tiffin Metal. There have been a variety of jobs over the years with a variety of different vendors.  *Id.*, 105:5-19.

Rodney Biggert, Jr., has been employed by the Seneca County Board of Developmental Disabilities for approximately 12 years.  He is the Director of Adult Services.  He oversees adult programming provided by the County Board of Developmental Disabilities, which includes the County's community employment options program.  He serves as the liaison between the Seneca County Board and Seneca Re-Ad Industries.  *See* Biggert, 7:3-8:15.  He describes Seneca Re-Ad as a non-profit industry that provides work opportunities for people with developmental disabilities.  Approximately 80 people are employed at the Fostoria facility, and approximately 25 at the Tiffin facility.  *Id.*, 20:10-21:18.  The mission of the Seneca County Board of Developmental

Disabilities is to improve the lives of people with developmental disabilities. The opportunity for workshop employment is but one of the services available to an individual with a disability. The County Board identifies the various opportunities available to an individual, but the individual makes the decision. Hurst 64:3-15; Biggert 110:13- 111:24, 124:6- 125:16. Other services include offering case management to individuals with developmental disabilities, working with early intervention to provide services for children, as well as adult programming. *Id.*, 26:4-13. There is no evidence that Roppe is involved in any of these other services.

The three categories of employees of the County Board who provide services at the Fostoria workshop are Workshop Specialists, the Division Manager, and the Adult Services Director. There is also a Business Manager for adult services that provides service also. *Id.*, 26:20-27:16. Laurie Fretz, the Division Manager, and the Workshop Specialists are all County Board employees. *See* Hurst, 33:14-18. There is no evidence any are employed by or are supervised in any way by Roppe.

Testimony relating to the relationship between Roppe and Seneca Re-Ad, from the perspective of Seneca Re-Ad was provided by Laurie Fretz in her October 17, 2019 deposition. She is the Division Manager of the workshop that is the subject of this litigation. She is employed by Seneca County Board of Developmental Disabilities. *See* Fretz, 8:19-9:3. She supervises the staff, the day-to-day production of the workshop, and the Unit Managers, also known as Workshop Specialists. The Workshop Specialists then supervise the individuals with developmental disabilities who work for Seneca Re-Ad. *Id.* 9:4-24. She has held that position since February of 2013. *Id.*, 9:25-10:2. Prior to that, she worked as a Workshop Specialist for Seneca Re-Ad facility, starting in 1990. *Id.*, 10:24-11:8. It is obvious from her testimony that she knows the business,

knows the Plaintiffs, and knows that Roppe plays no role in the direction and control of either the Plaintiffs or Seneca Re-Ad.

As to day-to-day control and direction of Plaintiffs, Seneca County Workshop Specialists (also known as Unit Managers), are responsible for all employment activities.  Ms. Fretz, testified:

- The Unit Managers supervise the day-to-day activity of Plaintiffs. *See* Fretz pp. 40-41.
- Training of the Plaintiffs is done by the Unit Managers.  *Id.,* 27:5-11; 28:15-25.
- Any assistance needed by the employees is provided by the Unit Manager. *Id.,* 27:10-18; 35:1-8.
- If the Plaintiff wants to change a task that the Plaintiff is working on, they take that request to the Unit Manager.  *Id.,* 38:8-20; 40:22-41; 5.
- Overall evaluation of Plaintiff's work performance and performance of specific tasks are done by the Unit Managers. *Id.,* 69:25-70; 3:121; 4:122; 4.
- Whether a Plaintiff can take a break is determined by the Unit Manager.  *Id.,* 132:17-133; 2.
- Training of the Workshop Specialists/Unit Managers are performed by employees of Seneca County Board of Developmental Disabilities, either other Workshop Specialists or the Division Manager.  *Id.,* 22:12-23; 12.
- Whether a specific Plaintiff can do certain tasks is determined by the Workshop Specialist/Unit Manager. *Id.,* 37:20-38:7.

It is undisputed that all Workshop Specialists/Unit Managers are employed by SCBDD. *Id.,* 34:23-25.  It is further undisputed that no Roppe employee directs, controls, or plays any role in the daily employment activities of the Plaintiffs or any other Seneca Re-Ad employee.

Regarding product to be produced and quantity, that is dependent upon orders from Roppe. But it is Ms. Fretz who decides what chain sets to run, depending upon what has been ordered. *Id.*, 36:15-37:11.

### C.  EVIDENCE FROM SENECA RE-AD WRITTEN DISCOVERY:

Similarly, the evidence produced by Seneca Re-Ad demonstrates Roppe is not involved in the management or day-to-day operations of the Fostoria workshop:

- ". . . No Roppe employees provide oversight, guidance, support or assist in the production process as defined by Plaintiffs". *See* Exhibit H- Re-Ad Defendant's Response to Plaintiff's Interrogatories, Interrogatory No. 3.

- Roppe only ". . . advises Defendant [Re-Ad] of Roppe's customer and product needs, in a manner similar to that which any consumer purchasing goods or services from a supplier or vendor would provide advice." *Id.*

- "County Board Staff [not Roppe] train individuals with disabilities on the proper way to perform "tasks" within the "production process" as both terms are defined by plaintiffs." *Id.,* Interrogatory No. 4.

- Employees of the County Board, not Roppe employees, assist Re-Ad in determining the best function assignment for disabled individuals at any given time. (Interrogatory No. 9).

- County Board Division Managers Kathy Nye and Laurie Fretz were responsible for overseeing the workshop. *Id.,* Interrogatory No. 10. [They are not Roppe employees.]

### D. EVIDENCE FROM ROPPE:

Brian Cooper is employed by Roppe Corporation as Product Manager for Roppe's luxury vinyl tile flooring business (LVT) and is Roppe Holding Company's Sample Manager. He is the Roppe employee who receives requests and orders from Roppe customers for samples. He is in charge of procuring samples for all Roppe Holding Company's operating businesses, Flexco, Roppe, Presidio and Six Degrees. He also oversees national accounts such as Lowes, Home Depot, True Value, etc. *See* Brian Cooper November 18, 2019 deposition, 13:14-14:15. Roppe utilizes the Re-Ad's workshop to produce floor sample sets mainly for Roppe and Flexco. *Id.*, 25:23-26:16. Roppe requires several different types of floor sample sets. The types of samples include architectural binders, chain sets, and wallboards, as examples. The Re-Ad workshop produces chain set samples. *Id.*, 49:24-49:2, 51:20-52:4. Other vendors produce other types of samples. *Id.*, 54:4-16, 55:7-59:6.

The general process of producing floor samples for Roppe from any of its vendors, including Re-Ad, is that Mr. Cooper would look at his inventory to determine what product he

may need, then determine the amount of Roppe material that would be needed to produce the number of samples he desires, then send the material to one of his vendors to make the product. *Id.*, 48:22-49:7.  Laurie Fretz is Roppe's primary contact with Seneca Re-Ad.  Typical discussions relate to the need for specific material, need for tags, clear business card holders, chains, boxes, tubs, etc.  *Id.*, 105:14-106:9. He deals with Seneca Re-Ad as he does his other sample vendors, of which there are three; frequently and as his needs require. *Id.*, 56:11-15, 58:5-16, 237:14-23, 48:22-49:7. He provides the material needed for the samples he orders, does not check on production processes or procedures, and if he has a problem with the product from Seneca Re-Ad or his other vendors, he calls them and expects them to make it right. *Id.*, 96:8- 97:14, 239:20-241:3, 242:13- 243:19, 115:19- 116:4, 116:24- 117:3, 265:22- 268:2. Mr. Cooper knows what he will be charged by Seneca Re-Ad as he knows for his other vendors: Laurie Fretz sends him a price sheet. *Id.*, 238:16- 239:4.

### E.  EVIDENCE FROM ROPPE'S WRITTEN DISCOVERY:

Pursuant to Plaintiffs' written discovery requests and testimony from Roppe employees, Defendant Roppe has affirmatively stated:

- The facility at which Seneca Re-Ad operates its production is located at 602 S. Corporate Drive, Fostoria.  The building contains four sections.  The first two are occupied by Re-Ad.  Roppe's engineering department is housed in "Building No. 3".  A separate company, Fostoria Bushing Inc., leases the space in "Building No. 4". No Roppe production facilities are in or around 602 S. Corporate Drive.  Roppe's corporate offices and production facilities are located at 1602 North Union Street, Fostoria.  Its warehouse is in northeast Fostoria.  *See* January 18, 2021 Exhibit A- Declaration of Mark Baker, ¶ 2, 3, and Cooper Dep., 114:10-20.

- Roppe provides no oversight, guidance or support to the staff or employees of Seneca Re-Ad, although it does maintain and set up the equipment provided to Re-Ad at the Re-Ad facility.  *See* Exhibit I- Roppe Response to Interrogatories, Interrogatory No. 3.

- Roppe provides no training or supervision to County Board or Seneca Re-Ad employees in the production process and related tasks in the workshop.  *Id.,* Interrogatory No. 7.

13

- Roppe has no knowledge of the essential functions of the production process position in the workshop, or the tasks that make up the production process. *Id.,* Interrogatories No. 8 and 9.

- Roppe is not involved in the determination of how persons with disabilities are designated to work or perform a specific task. *Id.,* Interrogatory No. 10. Nor are they involved in determining the qualifications, requirements, or suitability or standards for persons with disabilities working in the workshop. *Id.,* Interrogatory No. 11.

- Roppe is not involved in the identification of tasks involved in the manufacturing process. *Id.,* Interrogatory No. 12.

- Plaintiffs have not contacted any specific Roppe employee requesting "accommodations". *Id.,* Interrogatory Nos. 13 and 14.

Roppe is both a customer of Re-Ad and an avid supporter of the County Board service provided through Re-Ad. These two undisputed facts do allow this court or a jury to hold Roppe liable to Plaintiffs "as if" it was the employer of the Plaintiffs.

## IV. LAW AND DISCUSSION:

For Roppe to be held liable for Plaintiffs' claims of disability discrimination, Roppe must be an "employer" of the three Plaintiffs. *See* 42 USC §12111(4) (The term "employee" means an individual employed by an employer"), and 42 USC §12111(8) ("the term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.") The statute further states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of **employees**, **employee compensation**, **job training and other terms**, **conditions and privileges of employment**. *See* 42 USC §12112(a) (emphasis added.) Title VII, ADEA and ADA all generally define "employer" the same way, so case law addressing each of the statutes on this issue are of value. *Wathen v. General Electric Co.*, 115 F. 3d 400, N.6 (6th Cir. 1997). Again, the facts remain simple. Roppe is not an employer of the Plaintiffs.

However, the Sixth Circuit has recognized three different approaches in which courts may recognize an entity, though not the direct employer, has a sufficiently significant relationship with the employer, that the entity should also be considered an "employer" under the state and federal statutes. *Sampson v. Sisters of Mercy of Willard*, N.D. Ohio No. 3:12-cv-00824, 2015 U.S. Dist. LEXIS 84108, at 10 (June 29, 2015). In this matter, Plaintiff's Amended Complaint asserts two of these doctrines. Specifically, that Roppe and Seneca Re-Ad are (1) a "integrated enterprise", and thereby treated as a "single employer", or (2) the two entities should be considered "joint employers". *See* Amended Complaint, ¶¶ 112, 120,126 and 132. Regardless which doctrine Plaintiffs continue to assert, all evidence continues to contradict their allegations, which is why Defendant Roppe brings this motion for summary judgment now. When an employment relationship must be determined, this is a question of law for the Court. *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 975 (S.D. Ohio 2000), *citing to Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, 1998 WL 598778 (6th Cir. 1998). Further, in cases such as these, "[r]esolution of this issue is appropriate at the summary judgment stage, provided that there are no genuine issues of material fact." *Id.*

## A. ROPPE AND SENECA RE-AD ARE NOT AN "INTEGRATED ENTERPRISE" OR A "SINGLE EMPLOYER".

Courts look at four factors when deciding whether to consider separate entities an "integrated enterprise", and thereby create the legal fiction that the two are a "single employer". *Swallows, supra.* 993-994; *York v. Tennessee Crushed Stone Assoc.* 684 F 2d 360 (6th Cir. 1982) at 362. The factors are (1) An interrelation of operations (i.e., common offices, common record keeping, shared bank accounts and equipment.); (2) Common management; (3) Centralized control of labor relations and personnel; and (4) Common ownership and financial control. *Id.* All four factors need not be met for every case, and not one of them should be considered as conclusive to

the outcome. *Id.,* citing to *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1983). Notably though, none of these factors exist between Roppe and Seneca Re-Ad.

### (1) There is no Interrelation of Operations Between Roppe and Seneca Re-Ad (i.e. Common Offices, Common Record Keeping, Shared Bank Accounts and Equipment.)

Mark Baker is both the Vice President of Finance and the Treasurer of Roppe Holding Company and one of its operating companies, Roppe Corporation, Defendant in this lawsuit. He is one of the few Roppe people not deposed in this lawsuit, which makes sense because he is "in corporate" and not involved in the day-to-day business operations. He does, however, in his role as the person most knowledgeable of the finances of Roppe, know and confirm the following:

(a) Roppe does not share offices with either Seneca Re-Ad or the Seneca County Board of Developmental Disabilities. While Re-Ad occupies space in a building owned by Roppe, the companies do not "share" that space. Seneca Re-Ad has exclusive use of the two sections of the building it occupies. Roppe has exclusive use of the one section of the building it occupies. The fourth section is occupied by a company not affiliated with Roppe. *See* Declaration of Mark J. Baker, ¶¶ 2 & 4; and *see* Cooper, 79:12-24).

(b) Roppe keeps its own corporate record books and documents, none of which record the corporate actions of either Seneca Re-Ad or the Seneca County Board. Roppe does not keep or provide input into the corporate records of Seneca Re-Ad or the Seneca County Board. Roppe provides no accounting services or accounting or computer platforms or programing for either of the other two defendants. The handling of the invoices that Seneca Re-Ad sends to Roppe is the same as with Roppe's other vendors. Cooper 64:16-65:1. Roppe does not share any record keeping with the other defendants. *See* Baker Declaration ¶¶ 6 & 7, and *see* Fretz, 52:5-53:12.

(c) The companies do not have shared bank accounts. *See* Baker Declaration, ¶ 5.

(d) While some of the equipment Re-Ad uses to produce samples for Roppe is owned by Roppe, they do not "share" that equipment. Roppe production takes place in a building located at 1602 North Union Street, Fostoria, Ohio 44830. Neither Seneca Re-Ad nor the Seneca County Board produce any product or conduct any activities at that location. *See* Baker Declaration, ¶ 3. There is no evidence that any Roppe employee uses the equipment it provides to Seneca Re-Ad for production. The only Roppe employees who touch the equipment is the employee Roppe pays to provide maintenance and modifications to the equipment used by Seneca Re-Ad. From the Roppe finance department's perspective, this contribution of equipment and support is a *de minimis*

expense devoted to a worthwhile community social service organization. *Id.*, at ¶ 8; Cooper, 45:22-46:9. This is not the "sharing of equipment" that constitutes "interrelation of operations" envisioned by the *Swallow* Court's factor #1.

Reasonable minds can conclude only one thing from the above facts: there is no "interrelation" of the four aspects of corporate business operations required in *Swallows*.

### (2) THE MANAGEMENT, DIRECTORS, AND BOARDS OF ROPPE AND SENECA RE-AD ARE NOT COMMON; THEY ARE SEPARATE AND DISTINCT.

Roppe has its own Board of Directors with which Roppe's CEO, Don Miller, meets quarterly and with whom he consults on major, non-day to day business decisions. *See* Miller, 12:7-13:8. Mr. Miller does not attend either the County or Seneca Re-Ad board meetings, and there is no evidence that any member of the Roppe Board of Directors is also on either of the non-profit boards. *Id.,* at 40:10-15.[2] Mr. Baker, who is able to know as an officer of the company, knows of no common Board Members. *See* Baker Declaration, at ¶ 9. There has been no testimony in this case to refute that fact.

Seneca Re-Ad has its own Board of Directors that handles their own operations. *See* Miller, 16:18-21; 20:10-17. There have not been discussions between Roppe and either Seneca Re-Ad or Seneca County Board of DD about a more inclusive or integrated relationship. *Id.*, 37:2-23.

Regarding day-to-day management, there is no control of Seneca Re-Ad operations by Roppe employees and no control of Roppe operations by managers employed by the Seneca defendants. Rodney Biggert, Seneca County Board Director of Adult Services, reports to Lewis Hurst, Superintendent of Seneca Board of Developmental Disabilities, who reports to the Seneca DD board. The Seneca Re-Ad Board runs the operations of both the Tiffin and Fostoria workshops. *See* Hurst, 32:24-33:7. Laurie Fretz and the workshop specialists are all also County

---

[2] Non-board member employees of Roppe, including Brian Cooper, have served on Re-Ad board, but that is not "common boards or management" envisioned by this consideration.

Board employees. *Id.*, at 33:14-18. The CFO of Seneca Re-Ad also works for the County Board. *Id.*, at 68:18-69:12.

Laurie Fretz is Roppe's primary contact with Seneca Re-Ad. Typical discussions relate to the need for specific material, need for tags, clear business card holders, chains, boxes, tubs, etc. *See* Cooper, 105:14-106:9. There is no evidence she serves on either the board of Re-Ad or Roppe. Roppe does not check on workshop performance. The only way Roppe checks on performance is to determine estimated time of arrival of orders placed with the workshop. *Id.*, at 115:19-116:9.

Roppe has nothing to do with the production process. *Id.*, at 116:24-117:3. Brian Cooper oversees outside vendors of Roppe, and Seneca Re-Ad is one of Roppe's outside vendors. He oversees relationships with both other floor sample vendors, as well as manufacturers of other goods needed by Roppe. *Id.*, at 325:22-326:16. As it relates to the Re-Ad workshop, "Roppe doesn't really have any say on the workshops." *Id.*, at 45:22-46:9. They are used as a vendor/supplier. *Id.* Roppe sends them a purchase order, and Re-Ad produces the products ordered. *Id.*, at 59:15-23. They were chosen as a vendor, in Mr. Cooper's opinion, because "…one, they were local and two, it was believed that you know, we were doing the right thing by helping these MR/DD individuals have work." *Id.*, at 59:15-60:3.

Roppe's communications with the workshop are similar to its communications with other sample providers, probably daily, checking on orders, materials needed for production, shipments, etc. *Id.*, at 96:8-98:7. Brian Cooper has testified that, as a person in charge of procuring samples for Roppe, he probably has 15 or 16 jobs pending with another supplier of samples, Floor Production, and Floor Production is working on samples for Roppe every week. He talks to them every week. *Id.*, at 85:24-86:12. As a vendor, Mr. Cooper would like Seneca Re-Ad to produce what he orders. *Id.*, at 265:22-266:3. Roppe does not routinely audit or check the workshop's

quality. In the past, when one of Roppe's customers received chain sets and reported that a color was missing, Roppe notified the workshop, took the product back, corrected the mistake, and then shipped them back to Roppe. *Id.*, at 266:19-268:13.

The evidence is undisputed that management of Roppe and Seneca Re-Ad is not interrelated, either at the "corporate" or daily operations level. Accordingly, upon full consideration of the *Swallows* Court factor #2, the uncontroverted facts leads to no other conclusion, but that defendants are <u>not</u> a single, integrated company.

### (3) SENECA RE-AD ALONE CONTROLS LABOR RELATIONS AND PERSONNEL OF THE WORKSHOP.

While none of the four factors being discussed in this "single employer" allegation is conclusive, the "control over labor relations is a central concern." *Swallows*, p. 994 [**9] and the cases cited therein. There is absolutely no control by Roppe over the labor relations or personnel of Seneca Re-Ad and no control of Roppe by Seneca Re-Ad.

Seneca Re-Ad has a policy manual for the adult services individuals, and the County Board has a separate handbook for the County Board employees. *See* Fretz, 42:15-43:11, 43:12-19. Exhibit B- Fretz Deposition Exhibit 12 and Exhibit C- Fretz Deposition Exhibit 13. Roppe has its own Handbook, which was produced by, and solely for, Roppe. *See* Exhibit D- Defendant Roppe's Production, Bates #R000369-423.

Safety training at Seneca Re-Ad is provided in-house by the Workshop Specialists (i.e. County Board employees.) *See* Fretz, 45:5-17. The Seneca County Board of Developmental Disabilities contracts with Seneca Re-Ad to provide vocational services at the Fostoria and Tiffin workshops. *See* Hurst, 54:2-55:10. Pursuant to that contract, the Seneca County Board of Developmental Disabilities staff will provide onsite supervision for individuals employed by Seneca Re-Ad. Pursuant to the contract between Seneca Re-Ad and the County Board, the County

Board employees have always supervised those persons employed by Seneca Re-Ad.  *See* Hurst, 56:11-13; 57:5-10.  There is no evidence that Roppe is any way involved in the supervision of the individuals with developmental disabilities who are employed by Seneca Re-Ad.

Roppe and Seneca Re-Ad each have their own job descriptions and written step by step job tasks for their own operations. *See;* Exhibit E- Roppe's Standard Operating/ Safety Procedures for the Roppe production positions (633 pages of detailed job descriptions).  Bates #R000429-1062 and Exhibit F- Seneca Re-Ad Industries Work Method Element Description / Production Task Analysis Fretz Exhibit 19 Bates # 092-201.

Roppe's organizational chart has been produced. It contains no Seneca County Board or Seneca Re-Ad employees.  *See Exhibit G-* Bates #R000001-12.[3]

And lastly, Plaintiffs have failed to present any evidence or testimony that (1) Plaintiffs ever performed the tasks related to the Roppe production positions, (2) identified anyone on that organization chart, or anyone else employed by Roppe with whom they had contact regarding their job duties or activities.

Reasonable minds can only conclude there is no interrelation of labor relations or personnel between Roppe and the other defendants.

### (4) THERE IS NO COMMON OWNERSHIP OR FINANCIAL CONTROL BETWEEN ROPPE AND SENECA RE-AD.

Neither Seneca County Board of Developmental Disabilities nor Seneca Re-Ad have an ownership interest in either Roppe Holding Company or its wholly owned subsidiary, Roppe Corporation. *See* Baker Declaration at ¶ 10. Roppe does not have an ownership interest in either

---

[3] Brian Cooper was examined from 27:20 through 48:21, of his deposition, 21 pages, identifying Roppe employee roles and responsibility, none of whom have responsibilities with the Seneca County Board or Seneca Re-Ad.

of the other two defendants. *Id*. Roppe does not control or have any input into the financial operations of co-defendants. *Id*., at ¶ 11.

To Mr. Biggert's knowledge, there is a verbal agreement between Seneca Re-Ad and Roppe Holding Company for Seneca Re-Ad to utilize space in Roppe's building. He believes there may have been a deal prior to his employment to lease the space for "like a dollar a year." *See* Biggert, 24:18-25:19. Roppe obviously pays the invoices submitted to it for samples produced. *See* Cooper, 64:16-65:1. It also sponsors a Christmas Party for Seneca Re-Ad workshop employees at which the workshop employees are given a gift. *See* Cooper, 117:19- 118:18. No case or legal authority equates these types of action with the concept of "financial control" articulated and considered in *Swallows*. *See Swallows*, 128 F.3d at 993. The facts recited above clearly cannot lead to a conclusion Roppe and the Seneca defendants are integrated enterprises to the extent they should be considered a single employer.

Applying the law applicable to these facts, using *Swallows v. Barnes & Noble, supra,* as guidance, it is indisputable that Roppe should be dismissed from this lawsuit if the basis of the claim is Roppe and Seneca Re-Ad are but a singular enterprise and therefore should both be treated as a single employer of Plaintiffs.

In *Swallows*, the two plaintiffs had been employed by Tennessee Technological University (TTU), working in the school's bookstore. Barnes & Noble took over operations of the bookstore, and the two plaintiffs became direct employees of Barnes & Noble. Barnes & Noble took direction from TTU academic departments as to what books TTU required, in a similar manner that Seneca Re-Ad accepts orders from Roppe. TTU retained the right to remove products from the store that it found objectionable, a right greater than any that Roppe holds over Seneca Re-Ad in this case. Seneca Re-Ad can produce products for any other company without interference from Roppe. TTU

owned the building and the equipment used by Barnes & Noble. TTU provided security, custodial services, and snow removal for the building occupied by Barnes & Noble. Unlike the relationship between Roppe and Seneca Re-Ad, TTU dictated the initial rate of pay for those employees it had previously employed and required Barnes and Noble pay severance to any former employee of TTU Barnes & Noble terminated in the six months after the transition. When the two plaintiffs were terminated by Barnes & Noble, they sued TTU for both disability discrimination and age discrimination claiming that the business operations of Barnes & Noble and TTU were so intertwined that they should be considered an "single employer". Both the trial court and the 6th Circuit soundly rejected those attempts, as this court should do in the present case.

In *York v. Tennessee Crushed Stone Assoc.,* 684 F 2d 360, 1982 U.S. App. LEXIS 17058 (6th Cir. 1982), the plaintiff was employed by the Tennessee Crushed Stone Association but sued her employer and the corporate members of the Association contending that the members so intertwined their businesses with the trade association that they each should be considered employers. The Association had its own board of directors and had its own officers, just as in the case before this court. There was no "centralized control of labor relations", the same as in this case. The fact financial support of the association came solely from the individual members was not an indication of common ownership and control required to satisfy a single employer claim.

Just as in *Swallows*, as confirmed by *York*, the fact financial support for Re-Ad is provided by both the donation of plant, equipment and maintenance and revenue from purchases does not indicate common ownership and control of the nature contemplated to create the fiction of a single employer out of two separate companies. The ultimate question the 6th Circuit asked itself in *York* was whether the direct employer, the association, was but a "sham" and should be disregarded. Asking that same question here, leads to the same answer- Seneca Re-Ad and Roppe are separate,

22

distinct business entities and business operations, and should never be considered a "single employer".

In *Garlock v. Ohio Bell Telephone Company, Inc.*, 215 U.S. Dist. LEXIS 131239 (USDC ND Ohio 2015), Judge Boyko dismissed AT&T Services from an ADA and FMLA claim filed by a direct employee of Ohio Bell. Plaintiff argued that AT&T and Ohio Bell should be considered a single employer because (1) AT&T and Ohio Bell shared a handbook, (2) AT&T and consulted with one another on the decision to discipline plaintiff, (3) AT&T conducted FMLA investigations for Ohio Bell. As what should happen in this case, Judge Boyko concluded these interactions were insufficient, as a matter of law, to turn the two separate entities into a single employer.

As set forth above and discussed above, the undisputed evidence is: (1) Seneca Re-Ad and Roppe Corporation have no common offices, have separate record keeping, separate bank accounts and, while Roppe owns some of the equipment used by Seneca Re-Ad, that equipment is used exclusively by Seneca Re-Ad. (2) The Boards of Directors and management teams do not overlap; they are separate and distinct. (3) Seneca Re-Ad's labor relations and personnel are controlled by Seneca County Board of Developmental Disabilities alone. (4) There is no common ownership or financial control of Roppe by Seneca Re-Ad or the Seneca County Board, or either of the Co-Defendants over Roppe. Even in a light most favorable to the Plaintiffs, the lending of equipment to Re-Ad cannot overcome that it is the only one of a multitude of factors the court should consider that leads to no other conclusion that the two companies are not so intertwined or integrated to be considered a "single employer".

### B. ROPPE AND SENECA RE-AD ARE NOT A "JOINT EMPLOYER" UNDER THIS DOCTRINE, AS ROPPE PLAYS NO ROLE IN THE DIRECTION AND CONTROL OF THE PLAINTIFFS.

In defining the joint employer approach, the Sixth Circuit has held "entities are joint employers if they share or co-determine those matters governing essential terms and conditions of

employment". *Sciaretta v. Refractory Specialties, Inc.*, 7th Dist. Mahoning No. 17 MA 0094, 2018-Ohio-1141, ¶ 48-49, citing to *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 Fed.Appx. 253, 256 (6th Cir.2013).  In its determination, a court must "look to an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *Id.* quoting *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985).  There are no facts to support a conclusion that Roppe exerts any direction and control whatsoever over the employees of Seneca Re-Ad, let alone sufficient direction and control.  The 6th Circuit has utilized the following description of "joint employer" liability:

> The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of the employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

> *Swallows, supra.* Fn. 4 quoting from *NLRB v. Browning-Ferris*, 691 F 2d 1117 (3d Cir. 1982) at 1123.

The situation typically arises in the "leased employment" situation, where one company, the statutory employer, is responsible for hiring, placement, and payment of payroll and benefits to the employee. The company to whom the employee is leased exercise day-to-day oversight, control and direction and have significant input into decisions to discipline or terminate. An example of this relationship, that results in a finding that both companies are "employers" is *Carrier Corp. v. NLRB*, 768 F 2d 778, 1985 U.S. App. LEXIS 20958.  The trucking company that leased equipment and drivers from a driver service company:

- Exercised "substantial" day to day control over employees.
- Was the company that the drivers had substantially all their contact.
- Consulted with the leasing company on wages and benefits of the drivers.
- Retained right to reject drivers.

Not only did the Sixth Circuit find that under those circumstances the trucking company could be liable as a joint employer, it found the leasing company, the employees' statutory employer, not liable as a matter of law for not having the requisite actual direction and control of the employees relevant to the unfair labor charges asserted. Roppe in this case is one step farther from the leasing company in *Carrier*. Roppe does not even employ any of the plaintiffs, let alone exercise any day-to-day control over their terms and conditions of employment. For additional authority that Roppe cannot be held a "joint employer" of plaintiffs, see *NLRB v. Browning Ferris Industries, Inc.*, 691 F 2d 1117, 1982 U.S. App. LEXIS 24486. (3d Cir. 1982). See also *Adams v. Valega's Professional Home Cleaning, Inc.*, 212 U.S. Dist. LEXIS 157550 (USDC ND 2012) (FMLA claim, Motion for Summary Judgment granted); *Nelson v. Claremont County Veterans Service Commissions*, 212 US Dist. LEXIS 35230 (USDC SD Ohio) (ADA and FMLA claims dismissed pursuant to Motion to Dismiss on "Joint Employer" claim); *Metro Detroit Brick Layers District Counsel v. J.E. Hoetger & Co.*, 672 F.2d 580, 1982 U.S. App. LEXIS 20974 (6th Cir. 1982), affirming summary judgment dismissing defendant against theories of single employer and joint employer theories, although both concepts discussed under the "joint employer terminology".

As discussed above under the "single employer" theory section of this Memorandum and at the risk of being redundant, there is no evidence Roppe has any **right** of control over Plaintiffs, or that it **exercises** any direct control over the indicia of employment of the three Plaintiffs. In the words of Mark Baker, Vice President of Finance and Treasurer of Roppe, from his Declaration:

> 8.     Roppe pays the salary and benefits for one of its employees to provide maintenance to Seneca Re-Ad in the same manner as we provide some of the equipment used by Re-Ad – *gratis*, without charge to Re-Ad.  I view these contributions as *de minimis* expenses to Roppe, and as support to a worthwhile community social service organization. Roppe does not pay the wages or provide benefits or set the wage rate or benefits of plaintiffs or employees of either Seneca County Board of Developmental Disabilities or Seneca Re-Ad.

12.     Seneca Re-Ad can vacate our building at any time, for any reason. Our only financial contribution to the operations of Seneca Re-Ad is (1) purchase of the samples they manufacture for us; (2) provide building space; (3) supply and maintain some of their equipment used in production of our samples; and (4) sponsor a Christmas/Holiday party for Re-Ad and County Board employees.

*See* Baker Declaration ¶¶ 8 and 12.

There is no contrary evidence, and overwhelming evidence supporting the opposite of what Plaintiffs must prove to make Roppe an "employer" of plaintiffs.

The County Board employees with the most knowledge of the employment of the three plaintiffs, Laurie Fretz, Rodney Biggert and Lewis Hurst, have made it very clear that:

- Seneca County Board employees, the Unit Managers, supervise the day-to-day activity of Plaintiffs. *See* Fretz p. 40-41; Biggert, 46:21-47:6.

- Training of the Workshop Specialists/Unit Managers are performed by employees of Seneca County Board of Developmental Disabilities, either other Workshop Specialists or the Division Manager.  *See* Fretz 22:12-23; 12.

- Training of the Plaintiffs is done by the Unit Managers.  *See* Fretz 27:5-11; 28:15-25; Biggert, 46:21-47:6.

- Tasks are assigned to the plaintiffs by Workshop Specialists. *See* Fretz, 37:20-39:11; 50:2-52:4; Hurst, 107:19-108:2.

- Whether a specific Plaintiff can do certain tasks is determined by the Workshop Specialist/Unit Manager. (Fretz 37:20-38:7).

- Overall evaluation of Plaintiff's work performance and performance of specific tasks are done by the Unit Manager. *See* Fretz 69:25-70; 3:121; 4:122.

- If the Plaintiff wants to change a task that the Plaintiff is working on, they take that request to the Unit Manager.  *See* Fretz 38:8-20; 40:22-41; 5.

- Any assistance needed by the employees is provided by the Unit Manager. *See* Fretz 27:10-18; 35:1-8; Biggert, 46:21-47:6.

- Whether a Plaintiff can take a break is determined by the Unit Manager.  *See* Fretz 132:17-133; 2.

- Requests for accommodations are to be handled by Seneca Board employees. *See* Biggert, 118:10-121:21; Hurst, 109:17-111:7; 175:7-21.

- Payroll for the workshop employees is handled by the Workshop Specialists at Seneca Re-Ad.  *See* Fretz, 14:11-19.

The Workshop Specialists are trained by Rodney Biggert and Laurie Fretz, both Seneca County Board employees.  *See* Hurst, 148:3-17.  There is no testimony that any person employed by Roppe performs any of the above employment related tasks.

As to specific complaints of a Plaintiff, such as Joe Magers not being trained in specific jobs, the responsibility for those determinations are the Seneca County Board of Developmental Disabilities team members, including the SSA and workshop specialists.  *See* Hurst, 129:10-130:12. Laurie Fretz is the one who has addressed specific task assignment requests with Plaintiffs. *See* Fretz, 57:14-62:23 [regarding Pam Steward], Fretz 63:18-64:4 [regarding Mark Felton] 64:5-77:2 [regarding Joe Magers].  Roppe was not and never has been involved in the role as a "employer" of those persons employed by Seneca Re-Ad. All the evidence provided to Plaintiffs evidence the independence Roppe has from the other defendants.

Seneca Re-Ad has responded to written discovery as follows:

- ". . . No Roppe employees provide oversight, guidance, support or assist in the production process as defined by Plaintiffs".  *See* Defendant Seneca Re-Ad's Response to Interrogatories, Interrogatory No. 3.

- Roppe only ". . . advises Defendant [Re-Ad] of Roppe's customer and product needs, in a manner similar to that which any consumer purchasing goods or services from a supplier or vendor would provide advice." *Id.*

- "County Board Staff [not Roppe] train individuals with disabilities on the proper way to perform "tasks" within the "production process" as both terms are defined by plaintiffs." *Id.,* Interrogatory No. 4.

- Employees of the County Board, not Roppe employees, assist Re-Ad in determining the best function assignment for disabled individuals at any given time. *Id.,* Interrogatory No. 9.

- County Board Division Managers Kathy Nye and Laurie Fretz were responsible for overseeing the workshop.  *Id.,* Interrogatory No. 10.  (They are not Roppe employees.)

Roppe has responded to discovery as follows:

- Roppe provides no oversight, guidance or support to the staff or employees of Seneca Re-Ad, although it does maintain and set up the equipment provided to

Re-Ad at the Re-Ad facility. *See* Defendant Roppe's Response to Interrogatories Interrogatory No. 3.

- Roppe provides no training or supervision to County Board or Seneca Re-Ad employees in the production process and related tasks in the workshop. *Id.,* Interrogatory No. 7.

- Roppe has no knowledge of the essential functions of the production process position in the workshop, or the tasks that make up the production process. *Id.,* Interrogatories No. 8 and 9.

- Roppe is not involved in the determination of how persons with disabilities are designated to work or perform a specific task. (Interrogatory No. 10). Nor is Roppe involved in determining the qualifications, requirements or suitability or standards for persons with disabilities working in the workshop. *Id.,* Interrogatory No. 11.

- Roppe is not involved in the identification of tasks involved in the manufacturing process. *Id.,* Interrogatory No. 12.

- Plaintiffs have not contacted any specific Roppe employee requesting "accommodations". *Id.,* Interrogatory Nos. 13 and 14.

The testimony of Brian Cooper is entirely consistent with these written discovery responses. Roppe provides no oversight whatsoever of the workshop. *See* Cooper, 45:22-46:9; 79:9-11. Roppe has not reviewed or written job tasks for employees of the workshop. *Id.*, 193:16-194:7. Seneca Re-Ad is used as a vendor/supplier. *Id.* Roppe turns in orders to the workshop, and the workshop supervisors and their management handle the production in scheduling of their own workers. *Id.*, 218:20-219:16. This is consistent with the fact that no plaintiff was able to identify a single Roppe employed person who directed their tasks, or to whom they requested accommodations while working for Seneca Re-Ad.

In consideration of these undisputed facts, one more case is illustrative of why Roppe should be dismissed. In another 6th Circuit case, International *Long Shoreman's Association Local Union No 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 1991 US App LEXIS 4044 (6th Cir. 1990), the 6th Circuit affirmed dismissal of claim that a railroad and the company the railroad hired to operate the railroad's coal dock should be deemed joint employers of the employee hired by the coal dock operator. The court affirmed dismissal of the railroad concluding the two companies

were not "joint employers" notwithstanding the railroad (1) owned the facility, (2) paid all operating costs, and (3) was kept informed on labor negotiations between operators and its employees." The court also found no liability on the "joint enterprise" theory. The fact Roppe allows Seneca Re-Ad to use part of a building, equipment and provides maintenance for that equipment does not create a fact issue as to whether Roppe and Seneca Re-Ad should be considered either a single employer (integrated operations theory) or a joint employer (direction and control test).

## V.    TIMING OF ROPPE MOTION FOR SUMMARY JUDGMENT:

Enough discovery has taken place to permit this Court to be comfortable that there will never be any evidence developed or any changes in the law that will support the allegations made against Roppe Corporation.  Plaintiffs have been given ample time and fished enough trying to develop facts to support their claims against Roppe.  Although discovery is continuing, it is only because Plaintiffs are still looking for evidence that does not and will never exist. It is now time to end this litigation as to Roppe Corporation.

The following depositions have been taken:

**Roppe Employees:**

- Brian Cooper, Marketing Projects Manager, Roppe's primary contact with Re-Ad, deposed November 25, 2019.
- Collette Koerper, Brian's assistant, deposed November 25, 2019.
- Don Miller, President/CEO, deposed March 12, 2020.
- Randy Farabee, Director of Manufacturing, deposed March 12, 2020.
- Patrick Schooley, Director of Environmental Health and Safety deposed March 12, 2020.

**Seneca County Board Employees:**

**Management, Administrative and Social Service staff:**

- Lew Hurst, Superintendent of SCBDD, deposed on October 17, 2019.
- Rodney Biggert, Director of Adult Services, of SCBDD, deposed on October 16, 2019.
- Michelle Ickes, Business Manager, deposed on November 25, 2019.
- Kristin McQuistion, Service and Support Administrator, deposed on November 22, 2019.

- Jacinda Kemp, SSA, deposed on November 22, 2019.

**Fostoria Workshop - onsite Seneca Re-Ad Staff, employed by County Board:**

- Laurie Fretz, Division Manager for the Fostoria Campus, deposed on Oct. 17, 2019.
- Diane Nickler, Workshop Specialist, deposed on November 21, 2019.
- Cynthia Fletcher, Workshop Specialist, deposed on November 21, 2019.

**Plaintiffs:**

- Pamela Steward, deposed June 25, 2019.
- Ralph "Joe" Magers, deposed June 25, 2019.
- Mark Felton, deposed June 25, 2019.

In addition to these sixteen depositions, Roppe has produced 12,101 bates stamped documents which include purchase orders, invoices, handbooks, job descriptions, and other documents, plus thousands of un-bates stamped emails. Seneca County Board has produced 10,711 separately bates stamped documents. Seneca Re-Ad have produced even more, 18,116 bates stamped documents plus thousands of un-bate stamped emails. The three defendants have each responded to two sets of interrogatories. It is time to put Plaintiffs to the task of explaining why they believe Roppe should remain a party to this lawsuit.

**VI.    STANDARD OF REVIEW:**

To withstand a Motion for Summary Judgment, Plaintiffs must establish, through competent, admissible evidence, the existence of genuine issues of material fact.  *See* Fed. R. Civ. P.56(E); *Celotex Corp. v. Catrett*, 477 U.S. 317, 329 (1986)); *Hiney Printing Co. v. Brantner*, 243F.3d 956, 959 (6th Cir. 2001).  While the entire record must be examined in the light most favorable to the nonmoving party. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997), "the mere existence of a scintilla of evidence in support of [a party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving] party." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1986).  Further, Plaintiffs may not rest on the

mere allegations of their pleadings. *Campbell v.Grand Truck Western R.R.,* 238 F.3d 440, 445 (6th Cir. 2001).  They have a duty to come forth with requisite proof to support their legal claim in order to defeat Defendants' Motion for Summary Judgment. *Cardamone v. Cohen,* 241 F.3d 520, 524 (6th Cir. 2001).  Plaintiffs' failure to produce any evidence on issues for which they bear the burden of production at trial dooms their claims and entitles Defendant Roppe to summary judgment on all of Plaintiffs' claims.

## VII.    CONCLUSION:

The theories and arguments articulated by Plaintiffs' attorneys cannot obscure, hide, or supersede the facts of this case and the law applicable to those facts.  Plaintiffs have conducted ample discovery looking for facts to support their theories. Not one fact has been developed that would support these theories under the law as articulated by the 6th Circuit.  This is the type of case to which Justice Frankfurter was referring in *Watts v. Indiana* 338 U. S. 49 at 52 when he wrote: "…there comes a point where this Court should not be ignorant as judges of what we know as men."  This is that point. Defendant Roppe Corporation should be dismissed forthwith.

Respectfully submitted,

/s/ Roy A. Hulme
Roy A. Hulme (0001090)
Reminger Co., L.P.A.
One SeaGate, Suite 1600
Toledo, Ohio 43604-1584
Phone: 419-245-3759; Fax: 419-243-7830
Email: rhulme@reminger.com
Attorney for Defendant Roppe Corporation

31

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April 2021, a copy of the foregoing Defendant Roppe Corporation's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

/s/ Roy A. Hulme

Roy A. Hulme (0001090)


CERTIFICATION- Local Rule 7.1 (f)

I certify this case has been assigned to the complex track, and that the memorandum supporting this motion complies with the 30-page limit applicable to the complex track, not counting Section **V. Timing of Roppe Motion for Summary Judgment**. That section is not in support of the Motion for Summary Judgment and is included solely to establish that the issues raised in the Motion are ripe for disposition notwithstanding there is no date yet set for dispositive motions to be filed.

/s/ Roy A. Hulme

Roy A. Hulme (0001090)