UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pamela Steward, *et al.*,

        Plaintiffs,

v.

Roppe Corporation, *et al.*,

        Defendants.

Case No. 3:18-cv-2905

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Defendant Seneca County Board of Developmental Disabilities ("SCBDD") moves to strike certain paragraphs of Plaintiffs' First Amended Complaint and seeks an order of protecting it from responding to any further discovery on certain issues. (Doc. No. 105). Plaintiffs filed an opposition brief, (Doc. No. 107), and SCBDD filed a reply. (Doc. No. 110).

## II. DISCUSSION

In August 2020, Plaintiffs moved to amend the Complaint to add a claim under Title II of the Americans with Disabilities Act against SCBDD. (Doc. No. 61). In the Proposed Amended Complaint, Plaintiffs alleged SCBDD violated Title II's "integration mandate" by "unnecessarily segregate[ing] Plaintiffs by failing to provide them supported employment services and … instead prioritiz[ing] funding [for] sheltered employment." (Doc. No. 61-2 at 26) (removing title case but omitting brackets). Essentially, Plaintiffs sought to assert a broad challenge to SCBDD's "employment service system."

Because a Title II "integration mandate" claim concerns the services provided (or denied) to individuals with disabilities, I considered only those services which Plaintiffs alleged they had been denied when ruling on the motion to amend. (Doc. No. 68 at 9-10 (quoting *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012)) ("[A] claim survives only if it truly alleges a 'discriminatory denial of services' and must be dismissed if it instead concerns the 'adequacy' of the services provided."). That is, Plaintiffs alleged SCBDD had

> failed to provide the individuals it serves (including Plaintiffs) with individualized supported employment services that would enable them to: (a) learn about opportunities for competitive integrated employment, including opportunities at Roppe beyond the Sampling Division; (b) make meaningful choices about whether or not to seek other competitive integrated employment opportunities; and (c) help them acquire additional vocational skills and opportunities to work alongside non-disabled peers in competitive integrated employment settings.

(Doc. No. 61-2 at 28).

Because Plaintiffs failed to state any facts in support of their conclusory allegations with respect to Sections (a) and (b), I denied the motion to amend as to these points. (Doc. No. 68 at 10). But I concluded Plaintiffs had stated a plausible claim under Section (c) based on their allegations that SCBDD purported to offer cross-training services, but Plaintiffs were denied those services by SCBDD supervising staff because of their disabilities. As such, I permitted Plaintiffs to amend the Complaint to add a narrow "Title II claim related to the alleged discriminatory denial of cross-training services by SCBDD supervising staff." (*Id.*). In my opinion I specifically stated, "But because the Proposed Amended Complaint does not allege facts sufficient to support Plaintiffs' broader challenge to SCBDD's 'employment service system,' amending the Complaint to add those allegations would be futile." (*Id.*).

> On November 30, 2020, Plaintiffs filed the First Amended Complaint stating, in part:
>
> 140. SCBDD has violated and continues to violate the ADA by planning, funding, and administering its employment service system in a way that prioritizes providing services in segregated subminimum-wage settings rather than in integrated settings in order to maintain the Sampling Division for Roppe's benefit. Because SCBDD has

2

prioritized segregated subminimum-wage employment, it has consistently failed to provide supported employment services, like cross-training on all job tasks in the Sampling Division, that would allow the individuals it serves to build the skills necessary to access competitive integrated jobs at Roppe or elsewhere in the community. As a result of SCBDD's decisions to fund services in segregated subminimum-wage settings to the near exclusion of supported employment services in competitive integrated settings, Plaintiffs have been unjustifiably segregated in the Sampling Division in violation of Title II's integration mandate.

141. Evidence of SCBDD's unjustified segregation of Plaintiffs includes, but is not limited to:

> a) Failing to cross-train Plaintiffs on all job tasks in the Sampling Division so that Plaintiffs can develop skills needed to work in competitive integrated jobs at Roppe or elsewhere in the community;
>
> b) Failing to train Plaintiffs' immediate supervisors on working with individuals with disabilities;
>
> c) Failing to provide job coaches to work with individuals in the workshop;
>
> d) Placing 98 percent of its service recipients in segregated jobs; and
>
> e) Affirmatively advocating for public support for the SCBDD-Seneca-Roppe segregated subminimum-wage employment scheme.

(Doc. No. 72 at 39).

SCBDD seeks to strike Paragraphs 140, 141(b), (c), (d), and (e) and "all others which challenge any aspect of SCBDD's 'employment services system,' or which do not relate to the alleged discriminatory denial of cross training services."[1] (Doc. No. 105 at 1). Plaintiffs oppose striking these paragraphs, arguing the motion is not timely and that the allegations in these paragraphs are directly related to their Title II claim and do not prejudice SCBDD. (Doc. No. 107).

First, I find Plaintiffs' timeliness objection insincere, and ironical, as I previously found no "good cause" existed for Plaintiffs' prolonged delay in moving to amend the Complaint to add this claim in the first place. (Doc. No. 68 at 5).

---

[1] SCBDD also moves to strike paragraph 5, but I find nothing particularly objectionable in this general paragraph and deny SCBDD's motion as to paragraph 5.

3

But more importantly, I do not fault SCBDD for the delay in moving to strike these paragraphs as I presume SCBDD acted as I had, with the trust that Plaintiffs' First Amended Complaint would comply with the terms of my Memorandum Opinion and Order. Although I specifically prohibited the broad "employment service system" claim, Plaintiffs now allege in their opposition brief that the allegations contained in these subject paragraphs cannot be stricken because they "are intertwined with Plaintiffs' theory that SCBDD's failure to cross-train is part of the *overall discriminatory system* prohibited under *Olmstead* and Title II of the ADA." (Doc. No. 107 at 6) (emphasis added). They also claim "SCBDD's failure to cross-train cannot be divorced from the *overall structure of SCBDD's discriminatory system*." (Doc. No. 107 at 6) (emphasis added).

To be clear, I determined Plaintiffs had not stated sufficient facts to support this broad claim. Further, as stated by SCBDD, this is not a class action. (Doc. No. 110 at 6). Instead, there are three named Plaintiffs. Therefore, the scope of the Title II claim they seek to bring is limited to the manner in which SCBDD is allegedly "violating Title II of the ADA … by denying employment services to *plaintiffs* for which they are eligible with the result of unnecessarily segregating them in sheltered workshops." *Lane*, 841 F. Supp. 2d at 1208 (emphasis added). That is, Plaintiffs must identify services that are offered to others but are being denied to *them. See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n. 14 ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'… We do hold, however, that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide.").

With that, I now address the merits of the motion to strike the paragraphs at issue. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

4

In Paragraph 140, Plaintiffs lay out their broad challenge to SCBDD's "employment service system." Because the broad language is immaterial to the narrow claim I permitted, it is stricken. Plaintiff shall file amended language stating its Title II claim.

The "evidence" outlined in Paragraph 141 is also problematic. First, Paragraph 141(e) is unrelated to any services denied to Plaintiffs and is stricken as immaterial. Second, Paragraphs 141(b), (c), and (d) each seek to challenge the "adequacy" of the services provided and "demand that [SCBDD] provide a competitive job in the community and a certain standard of care or level of benefits." *Lane*, 841 F. Supp. 2d at 1207-08. Because the ADA does not impose a "standard of care," *Olmstead*, 527 U.S. at 603 n. 14, these paragraphs are not evidence of Plaintiffs' Title II claim and are also stricken as immaterial.

Moving forward, discovery on this Title II claim shall be limited to only the failure to cross-train claim. Should Plaintiffs identify through discovery other services offered by SCBDD, which *they* have been denied because of their disability, they may file a motion for leave to amend their Complaint to add those services.

### III. CONCLUSION

For the foregoing reasons, SCBDD's motion to strike is granted with respect to Paragraphs 140 and 141 (b), (c), (d), and (e). I deny the motion to strike paragraph 5. (Doc. No. 105). Further discovery on this Title II claim shall be limited to SCBDD's denial of its purported cross-training services to Plaintiffs. Within fourteen (14) days, Plaintiffs shall refile the First Amended Complaint to state the Title II claim in the manner I permitted previously, (Doc. No. 68), as clarified here. The stricken language must be omitted from the refiled First Amended Complaint.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge