UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Pamela Steward, *et al.*,　　　　　　　　　　　　Case No. 3:18-cv-2905

　　　　　Plaintiffs,

　　v.　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Roppe Corporation, *et al.*,

　　　　　Defendants.


### I.　　INTRODUCTION AND BACKGROUND

Plaintiffs Pamela Steward, Ralph Magers, and Mark Felton are individuals with disabilities who are employed by Defendant Seneca Re-Ad Industries, Inc. ("Seneca Re-Ad"), in a manufacturing workshop located within Defendant Roppe Corporation's commercial flooring products manufacturing facility in Fostoria, Ohio. Seneca Re-Ad leases space within Roppe's facility for its workshop, in which Seneca Re-Ad employees produce flooring samples that are then sold to Roppe. (*See* Doc. No. 84-1 at 19-22).

Plaintiffs allege Roppe and Seneca Re-Ad have violated Title I of the Americans with Disabilities Act and Ohio Revised Code § 4112.02(A) by discriminating against them with regard to training and promotional opportunities and compensation, as well as by failing to individually assess Plaintiffs' work capabilities or provide them with reasonable accommodations. (Doc. No. 116). Roppe has moved for summary judgment on all claims asserted against it by Plaintiffs. (Doc. No. 151). Plaintiffs filed a brief in opposition to the motion, (Doc. No. 154), and Roppe filed a brief in reply. (Doc. No. 155). For the reasons stated below, I grant Roppe's motion.

## II. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant and all reasonable inferences are drawn in the nonmovant's favor. *See, e.g., Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citing cases). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. DISCUSSION

Roppe contends it is entitled to summary judgment on all of Plaintiffs' claims because it is not Plaintiffs' direct employer and neither of the "single-employer" or "joint-employer" theories apply in this case. (*See* Doc. No. 151). Plaintiffs do not dispute that Roppe is not their direct employer, but they argue a reasonable jury could conclude Roppe is liable for disability discrimination under either the single-employer theory or the joint-employer theory. (*See* Doc. No. 154).

### A. SINGLE EMPLOYER

"A single employer analysis asks whether 'two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise.'" *Nat'l Lab. Rels. Bd. v. Bannum Place of Saginaw, LLC*, 97 F.4th 351, 359 (6th Cir. 2024) (quoting *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 n.4 (6th Cir. 1997)).[1] In determining whether to treat two entities as a single employer, Courts consider four factors in determining whether two covered entities should be

---

[1] Courts "look to both labor cases and civil rights cases for guidance" on the single-employer and joint-employer theories, because those theories arose in the labor relations context "and were subsequently imported into the civil rights context." *Swallows*, 128 F.3d at 993 n.3.

2

treated as a single employer: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Swallows*, 128 F.3d at 993–94 (citing *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982)). "No one factor is conclusive, but control over labor relations is a central concern." *Arnold v. Taylor Corp.*, No. 3:17 CV 1381, 2019 WL 10694451, at *6 (N.D. Ohio Dec. 3, 2019) (citing *Swallows*, 128 F.3d at 994). As I discuss below, none of these factors weigh in favor of a single employer finding.

1. **Interrelation of Operations**

As the Sixth Circuit has held, "there is insufficient evidence of interrelation of operations" between two companies that have "kept their own records[] and maintained separate bank accounts and offices." *Swallows*, 128 F.3d at 994. Roppe represents, and Plaintiffs do not dispute, that Roppe and Seneca Re-Ad keep their own records and maintain separate bank accounts. (*See* Doc. No. 151 at 19-21). Roppe also asserts that the $1 per year lease agreement it maintains with Seneca Re-Ad and Roppe's provision of maintenance for some of Seneca Re-Ad's equipment does not rise to the level of interrelated operations. (*See* Doc. No. 85-1 at 13; Doc. No. 151-3 at 8-9).

Plaintiffs dispute Roppe's argument that their case relies only on the "provision of free rent, maintenance, and equipment to Seneca Re-Ad." (Doc. No. 154 at 28). They contend the record "demonstrates Roppe's control and use of Seneca Re-Ad at every level" and therefore, there is an interrelation of operations between the two companies.

But Plaintiffs' representations of "control" rely, in the end, on the fact that Seneca Re-Ad sells the samples its employees produce almost exclusively to Roppe. (*See, e.g., id.* at 30). While that circumstance may be uncommon in the marketplace, Plaintiffs have not pointed to any case in

3

which a court has held that a supplier's dependence on its customer demonstrates an interrelation of operations to the same extent as shared bank accounts or common offices and record keeping.

Plaintiffs assert, and Roppe does not dispute, that Seneca Re-Ad employees use certain equipment owned by Roppe. (Doc. No. 154 at 30). But the two companies do not share that equipment, as Roppe's production work is performed at another location. (Doc. No. 83-1 at 1). And Roppe is not responsible for Seneca Re-Ad's utility costs associated with operating the equipment. (*See* Doc. No. 151-5 at 14). Plaintiffs have not met their burden to show a reasonable jury could conclude this evidence is sufficient to establish "the type of interrelation found in cases treating two entities as a single employer." *Swallows*, 128 F.3d at 994.[2]

### 2. Common Management, Directors, and Boards

The second factor looks for the presence of "common officers or board members." *Swallows*, 128 F.3d at 994 (citing *York*, 684 F.2d at 362). *See also Bannum Place*, 97 F.4th at 360 (concluding two companies had common management because they had nearly identical officers and the same individual was president of both); *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F. Supp. 1155, 1164 (W.D. Tenn. 1987) (finding two organizations had common management where

---

[2] The Sixth Circuit relied on the following cases to describe the "type of interrelation" that satisfies the first factor of the single employer inquiry:

> *Armbruster[ v. Quinn]*, 711 F.2d [1332,] 1338 [(6th Cir. 1983)] (finding interrelation of operations where parent company "handled" subsidiary's accounts receivable and its payroll and cash accounting, provided it with administrative backup, monitored its sales shipments, allowed subsidiary's managerial employees to use its company credit cards, and housed subsidiary's bank accounts at its headquarters); *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933-34 (11th Cir. 1987) (parent and subsidiary companies were marketed as "twins in service," and parent kept subsidiary's books and records, issued its payroll checks and paid its bills); *EEOC v. Dolphin Cruise Line, Inc.,* 945 F. Supp. 1550, 1553-54 (S.D. Fla. 1996) (two companies provided exclusive services to each other, were marketed as twin operations, used each other's logo and letterhead interchangeably, issued checks on each other's behalf, and kept business and personnel records at the same office).

*Swallows*, 128 F.3d at 994.

4

the board of the first entity selected the board of the second entity and the second entity's board chairman was the executive director of the first entity); *E.E.O.C. v. Care Ctrs. Mgmt. Consulting, Inc.*, 942 F. Supp. 2d 771, 779 (E.D. Tenn. 2013) (finding complaint plausibly alleged common management where the same individual was president of both entities).

Plaintiffs assert this factor is met because two Roppe employees – Brian Cooper and Galen Dillon – served on Seneca Re-Ad's board. But there is no dispute that Cooper and Dillon are not and have never been Roppe officers or board members. And Plaintiffs have not identified any case in which a court held that an employee of one organization acting as a board member of another organization was sufficient to satisfy this factor.

Plaintiffs also assert Roppe exerts managerial control over Seneca Re-Ad "because Seneca Re-Ad has no officers of its own." (Doc. No. 154 at 32). But, as I have previously discussed, the Seneca County Board of Developmental Disabilities ("SCBDD"), "is charged with providing services to meet the needs of Seneca County residents who are individuals with developmental disabilities." (Doc. No. 111 at 1) (citing Ohio Rev. Code §§ 5126.04(A) and 5126.05(A)).

> To do so, the SCBDD "may enter into contracts with other such boards and with public or private, nonprofit, or profit- making agencies or organizations." Ohio Rev. Code § 5126.05(C). The SCBDD entered into one such contract with not-for-profit corporation Seneca Re-Ad Industries, Inc. (Doc. No. 18-1). . . .
>
> Pursuant to the Contract for Vocational Services between the SCBDD and Seneca Re-Ad, Seneca Re-Ad agreed to operate a sheltered workshop, employing only individuals with disabilities. But these Seneca Re-Ad employees were to be supervised on-site by employees of the SCBDD. The contract provided that the SCBDD Director of Adult Services serve as the liaison between Seneca Re-Ad and the SCBDD and assist Seneca Re-Ad in the implementation of the contract. (Doc. No. 18-1 at 2, 13).

(Doc. No. 111 at 1-2) (footnote omitted).

In short, SCBDD, not Roppe, is responsible for many, if not all, of Seneca Re-Ad's officer-level functions.³ I conclude this factor weighs in favor of Roppe.

### 3. Centralized Control of Labor Relations and Personnel

The "'critical'" inquiry relevant to the question of whether Roppe maintained control over Seneca Re-Ad's labor relations and personnel is "'[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Swallows*, 128 F.3d at 995 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993)) (alteration by *Frank*) (further citation and quotation marks omitted). This factor weighs in favor of Roppe, because there is no record evidence that shows Roppe had any control over Seneca Re-Ad's employment matters.

Plaintiffs dispute this conclusion, arguing "Roppe requirements determine the daily tasks and take-home pay of Seneca Re-Ad workers." (Doc. No. 154 at 31). Plaintiffs do not identify any policies which might support this argument. Instead, they point to the fact that "Roppe is the workshop's only customer," apparently contending that the type and volume of product samples contained in Roppe's purchase orders equates to control of Seneca Re-Ad's workforce. (*Id.*).

But, as Roppe argues, Roppe and Seneca Re-Ad's "vendor-vendee relationship" is insufficient to demonstrate centralized control of labor relations. (Doc. No. 155 at 11). While Seneca Re-Ad may depend on Roppe's purchase orders to pay its employees, there is no evidence that Roppe has "authority to hire or fire [Seneca Re-Ad] employees . . . [or] pay[s] their wages and benefits." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 495 (6th Cir. 2011).

Plaintiffs again argue that "because Seneca Re-Ad has no officers and no employees – other than the individuals with disabilities who actually participate in the manufacturing process – the

---

³ Nor does *Hays v. Chattanooga Tank Wash, LLC*, 658 F. Supp. 3d 589 (E.D. Tenn. 2023), help Plaintiffs. (*See* Doc. No. 154 at 32). In that case, the two defendant-entities did not dispute that the employees of one defendant "perform[ed] practical managerial functions over [the other's] operations." *Hays*, 658 F. Supp. 3d at 595. Here, there is no evidence that Roppe employees performed managerial functions for Seneca Re-Ad employees.

resulting power vacuum is filled by officials at Roppe." (Doc. No. 154 at 33). To support this assertion, Plaintiffs point to a 2014 request by Roppe officials "that an employee at Seneca Millwork, an [Roppe Holding Company] subsidiary, be transferred into the [Seneca Re-Ad] workshop." (*Id.*).

This argument fails as well. Seneca Re-Ad represents that SCBDD's "Division Manager is responsible for training workshop specialists employed by" SCBDD, as well as "providing habilitation services and various administrative functions." (Doc. No. 83-8 at 8). "Roppe is not involved in training workshop specialists." (*Id.*). Thus, the evidence establishes that it is SCBDD, not Roppe, that fills any alleged "power vacuum" with respect to training Seneca Re-Ad's workforce.[4]

Moreover, Roppe's "request" that an individual be evaluated for a transfer to Seneca Re-Ad was only that, a request. That individual could not begin working for Seneca Re-Ad until after SCBDD determined he met the required eligibility requirements, and the individual was terminated from Seneca Millwork's employment. (*See* Doc. No. 151 at 30).

Plaintiffs have not met their burden to point to evidence from which a reasonable jury could conclude Roppe maintained control over Seneca Re-Ad's labor relations and personnel. Therefore, I conclude this factor weighs in favor of Roppe.

### 4. Common Ownership and Financial Control

Finally, Roppe asserts, and Plaintiffs do not dispute, that Seneca Re-Ad has a distinct legal identity and that Roppe does not have an ownership interest in Seneca Re-Ad. (*See* Doc. No. 83-1 at 3). Therefore, this factor also weighs in favor of Roppe. *See, e.g., Swallows*, 128 F.3d at 995; *E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 572-73 (6th Cir. 1984).

---

[4] Plaintiffs' deposition testimony supports this conclusion as well. Both Felton and Steward testified they had never had any contact with anyone working for Roppe prior to their depositions. (Doc. No. 89-1 at 5; Doc. No. 91-8 at 8).

**5.     Plaintiffs' Alternative Argument**

Plaintiffs also argue there are other considerations relevant to the single-employer analysis beyond the four established factors. To this end, Plaintiffs assert that "the Sixth Circuit found a single employer relationship where the companies, *inter alia*, 'provided services for and made sales to each other' and held themselves out to the public as single-integrated business enterprises.'" (Doc. No. 154 at 27) (quoting *Nat'l Lab. Rels. Bd. v. Palmer Donavin Mfg. Co.*, 369 F.3d 954, 957 (6th Cir. 2004)). (*See also* Doc. No. 154 at 31). But Plaintiffs' characterization of the *Palmer Donavin* holding is misleading. Before citing evidence regarding sales and public-facing representations, the Sixth Circuit first concluded there was evidence to satisfy <u>all four</u> of the factors enunciated in *Swallows* and other cases:

> Respondent P–D Midwest Transport, as a <u>wholly owned subsidiary</u> of Respondent Palmer Donavin, shares common ownership with its parent. Additionally, <u>there is substantial overlap in management and officers</u> of the Respondents. P–D exists solely to deliver goods to Palmer Donavin customers, and its delivery trucks bear Palmer Donavin's company name. Moreover, they <u>operate from the same facility, have the same health, life insurance and profit-sharing plans, use the same payroll system, enjoy the same work holidays, and the Respondents' employees occasionally fill in for each other</u>. Furthermore, as the Board described, they have "<u>formulated and administered a common labor policy</u>; . . . have provided services for and made sales to each other; . . . have shared common advertising, . . . phones, sales, and purchasing; and have held themselves out to the public as single-integrated business enterprises."

*Palmer Donavin*, 369 F.3d at 957 (6th Cir. 2004) (quoting *In Re Palmer Mfg. Co.*, 338 NLRB No. 23 (Sept. 30, 2002)) (emphasis added).

Plaintiffs' argument is not persuasive. Even if the record evidence could reasonably be viewed in the way Plaintiffs suggest, Plaintiffs have not identified any case in which a court held that maintenance services, sales, and marketing materials could establish a single employer relationship in spite of the absence of any of these four well-established factors.

I conclude Roppe is entitled to summary judgment on this theory of liability.

8

B.   **Joint Employer**

The joint-employer approach "'consider[s] whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees." *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 522 (6th Cir. 2020) (quoting *Swallows*, 128 F.3d at 993). *See also Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985) (If "two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment – they constitute 'joint employers.'") (citation and quotation marks omitted). "The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Sanford*, 449 F. App'x at 492 (citation omitted).

As I concluded above with respect to the single-employer control-over-labor-relations factor, Plaintiffs have not identified evidence in the record to demonstrate that Roppe has the authority to determine the essential terms of their employment. There is no evidence that Roppe has or shares the authority to hire, fire, or discipline Seneca Re-Ad employees, to set the terms of their compensation, or to direct or supervise their performance. Roppe is entitled to summary judgment on this basis as well.

V.   **CONCLUSION**

For the reasons stated above, I grant Defendant Roppe Corporation's motion for summary judgment. (Doc. No. 151).

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge